1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   NANCY STEVENS,                          CASE NO. 09cv2565 WQH (RBB)

12                          Plaintiff,       **ORDER**
              vs.
13   OPTIMUM HEALTH INSTITUTE,
     ROBERT NEES, and DOES 1 through
14   20, inclusive,

15                          Defendants.

16

17   HAYES, Judge:

18         The matter before the Court is Defendants' Amended Motion to Dismiss.  (Doc. # 16).

19

20                          **BACKGROUND**

21         On November 13, 2009, Plaintiff initiated this action by filing her Complaint.  (Doc.

22   # 1).  On January 13, 2010, Plaintiff filed her Second Amended Complaint ("SAC"), which

23   is the operative pleading in this case.  (Doc. # 8).   Plaintiff, a blind woman, alleged

24   Defendants Optimum Health Institute and Robert Nees violated the California Unruh Civil

25   Rights Act, Cal. Civ. Code § 51, *et. seq.*, by denying her services in a business establishment

26   and the California Disabled Persons Act ("DPA"), Cal. Civ. Code § 54, *et. seq.*, by denying

27   her access to a place of public accommodation because of her disability.  *Id.*  On February 26,

28   2010, Defendants Optimum Health Institute and Robert Nees filed a motion to dismiss.  (Doc.

1   # 16).

2

3   **FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

4       Plaintiff is a resident of Bend, Oregon.  (Doc. # 8 at ¶ 1).  Plaintiff is disabled under the

5   California Disabled Persons Act because she is visually impaired.  *Id*. at ¶ 6.  Plaintiff uses a

6   guide dog because of her visual impairment.  *Id.* at ¶ 7. Optimum Health Institute is a

7   California corporation with its primary place of business in Lemon Grove, California.  *Id.* at

8   ¶ 3.  Optimum Health Institute is a public accommodation and makes its services available to

9   the general public.  *Id.* at ¶¶ 3, 8.  Robert Nees, also a California resident, is "an officer of

10  Optimum Health and [is] responsible for implementing and enforcing the policies, practices,

11  and procedures of Optimum Health."  *Id.* at ¶ 4.  "Beginning in February 2009 and continuing

12  to the present,"  Defendants refused to allow Plaintiff to participate in their programs at

13  Optimum Health Institute "unless she was accompanied by a 'Sherpa' to provide assistance

14  to her."  *Id.* at ¶ 8.  Plaintiff was denied "full and equal access" to Optimum Health Institute's

15  services "because Plaintiff has a guide dog and because the subject facility 'has stairs.'"  *Id.*

16      Plaintiff seeks damages, declaratory relief, and injunctive relief pursuant to the Unruh

17  Civil Rights Act and the Disabled Persons Act.  *Id.* at ¶¶ 17, 20, 23.

18

19  **CONTENTIONS OF THE PARTIES**

20      Defendants contend that the Unruh Civil Rights Act is not applicable to "non-profit

21  religious corporation[s]."  Doc. # 16-1 at 5.  "It is simply not possible to conclude that OHI

22  is a business establishment because it is instead a church."  *Id.*  Defendants contend that the

23  Unruh Civil Rights Act does not apply to "churches . . . or individuals who act on behalf of

24  religious organizations . . . ."  *Id.*  Defendants contend that the Disabled Persons Act also does

25  not apply to churches because they are not places of public accommodation.  *Id.* at 10.

26  Defendants contend that the Americans with Disabilities Act ("ADA"), "which has been

27  incorporated into Unruh and the DPA, notes that churches are not public accommodations."

28  *Id.*  Defendants contend that the "SAC's reference to OHI as a public accommodation is not

sufficient to meet Plaintiff's pleading burden because there is no factual or legal support for that claim." *Id.* at 11.

Defendants request the Court take judicial notice of a certified copy of Optimum Health Institute's articles of incorporation as a religious nonprofit corporation under California law (Exhibit A); a certificate of status from the Secretary of State of California showing that Optimum Health Institute remains in good standing as a nonprofit corporation (Exhibit B); letters from the Internal Revenue Service showing Optimum Health Institute's tax exempt status (Exhibits C, I, and J); a letter from the California Franchise Tax Board showing Optimum Health Institute's tax exempt status (Exhibit K); a certified copy of a judgment in favor of Optimum Health Institute in a state court Fair Employment and Housing Act lawsuit (Exhibit D); and excerpts from the Optimum Health Institute website (Exhibits E-F).  (Doc. # 16-2).

Plaintiff contends that she has properly alleged facts which would establish that Optimum Health Institute is a place of public accommodation.  (Doc. # 21 at 9).  Plaintiff contends that there is "[n]o [b]lanket [e]xemption from the Unruh Act for [n]on-[p]rofit [r]eligious [e]ntities." *Id.* at 13.  Plaintiff contends that case law allowing discrimination in the membership decisions of private organizations does not apply to business transactions with non-members. *Id.* at 14.  Plaintiff contends that Optimum Health Institute "sells access to its health center to anyone – 'adherents' and 'guests' alike, regardless of personal religious beliefs or values," which negates any argument that admission to the facility is limited to members or even people who share the same belief system.  *Id.* at 19.   Plaintiff contends that the exception to the ADA for religious entities is not incorporated into California law and that religious facilities are places of public accommodation for the purposes of the Disabled Persons Act. *Id.* at 16-17.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure

09cv2565 WQH (RBB)

8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## ANALYSIS

Pursuant to the Unruh Civil Rights Act, "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  "A violation

of the right of any individual under the Americans with Disabilities Act . . . shall also constitute a violation of" the Unruh Civil Rights Act. Cal. Civ. Code § 51(f). The Unruh Civil Rights Act creates a private right of action against anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51." Cal. Civ. Code § 52(a). Defendants may be held liable for "actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)," as well as attorney's fees. *Id.*

The Disabled Persons Act states:

> Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Cal. Civ. Code § 54.1(a)(1). Additionally, "[e]very individual with a disability has the right to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1 without being required to pay an extra charge or security deposit for the guide dog, signal dog, or service dog. " Cal. Civ. Code § 54.2(a).

The Disabled Persons Act allows suits for interference with the right to access public accommodations:

> Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2. "Interfere," for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person.

Cal. Civ. Code § 54.3(a).  The Disabled Persons Act incorporates the standards of the ADA, "except that if the laws of this state prescribe a higher standard," the higher standard applies. Cal. Civ. Code § 51(a)(3).

While the Unruh Civil Rights Act is applicable to "business establishments" and the Disabled Persons Act is applicable to "public accommodations," as well as a number of enumerated locations, California courts have held that the two terms are closely related and often analyze them together.  *See Californians for Disabilities Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586 (2008) ("The [Unruh] Act and the DPA entitled disabled individuals to full and equal access to public accommodations.").  The Unruh Civil Rights Act "'[emanates] from and [is] modeled upon' California's earlier statute forbidding arbitrary discrimination in 'public accommodations.'"  *Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 78 (1985) (citing *Marina Pt., Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982)) (alternations in original).  "[T]he Unruh Act expanded the reach of such statutes from common carriers and places of public accommodation and recreation, e.g., railroads, hotels, restaurants, theaters and the like, to include 'all business establishments of every kind whatsoever.'"  *Marina Pt.*, 30 Cal. 3d at 731.  The phrase "all business establishments of every kind whatsoever" is intended to include all traditional "public accommodations," as well as businesses which would not have been included under the umbrella of "public accommodations."  *Id.*

Although places of public accommodation and business establishments are required to permit access by the disabled, the Unruh Civil Rights Act does not apply to "truly private social clubs," *see Warfield v. Peninsula Golf & Country Club*, 10 Cal 4th, 594, 617 (1995), or to "membership decisions of a charitable, expressive, and social organization," *see Curran v. Mt. Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 696 (1998).  *See also Doe v. California Lutheran High School Assoc.*, 170 Cal. App. 4th 828, 836-37 (2009).  However, "public accommodation" and "business establishment" are defined broadly under California law and includes "the membership policies of an entity—even a charitable organization that lacks a significant business-related purpose—if the entity's attributes and activities demonstrate that

it is the equivalent of a classic place of public accommodation or amusement." *Curran*, 17 Cal. 4th at 697 (citation omitted).

In *Curran*, the California Supreme Court determined that the Boy Scouts is "an expressive social organization whose primary function is the inculcation of values in its youth members, and whose small social group structure and activities are not comparable to those of a traditional place of public accommodation or amusement." *Id.* at 699. Therefore, the California Supreme Court held that the Boys Scouts is permitted to exclude gay members from its organization. *Id.* However, the Court noted "we have no doubt that the Unruh Civil Rights Act would apply to, and would prohibit discrimination in, the actual business transactions with nonmembers engaged in by the Boy Scouts in its retail stores and elsewhere . . . . Those business functions are distinct from the Scouts' core functions . . . ." *Id.* at 700. The California Supreme Court also stated it would have reached the opposite outcome as to whether the Unruh Civil Rights Act applied to membership if access to the Boy Scouts' facilities and activities such as "troop meetings, overnight hikes, [or] the national jamboree" could be purchased by nonmembers. *Id.* Indeed, where "membership" in an organization which excluded girls simply involved paying a small fee for full access to "drop in" recreational facilities, the California Supreme Court held that the Unruh Civil Rights Act applied and the facility could not discriminate. *See Ibister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 78-81 (1985).

At least two California appellate courts have addressed the applicability of the Unruh Civil Rights Act to a nonprofit religious corporation. In *Doe v. California Lutheran*, a California appellate court held that the Unruh Civil Rights Act is inapplicable to student admissions and expulsions from a parochial high school because the school exists to promote Lutheran values and selected its students based on these values. 170 Cal. App. 4th at 838. Therefore, this high school was permitted to expel two students because they were lesbians. *Id. Doe v. California Lutheran* goes on to note that "it does not appear that merely selling a service to like-minded persons for money is enough to make a nonprofit organization into a 'business establishment.'" *Id.* at 840. However, while the school was permitted to

- 7 -

discriminate in its admission decisions, the court in *Doe v. California Lutheran* recognized that the school would not be permitted to discriminate "with respect to its nonmember transactions" such as selling football tickets to the public or holding golf tournaments to raise funds for the school. *Id.* at 839.

In *Pines v. Tomson*, 160 Cal. App. 3d 370, 379-80 (1984), a California court of appeal held that the Unruh Civil Rights Act was applicable to a "private nonprofit religious corporation which publishes directories of 'born again' Christian businesses." The court in *Pines* held that requiring the publisher of the "Christian Yellow Pages" to accept listings without regard to the faith of the business owner was "amply justified by the compelling state interest in eradicating invidious discrimination" although it infringed on the publisher's "freedom of religious association." *Id.* at 392. The court relied on the many "businesslike attributes" of the Christian Yellow Pages, including "the substantial and required monetary fee" to be listed, the "derivation of income" from the publication, and the "fact that the [Christian Yellow Pages] directories" are modeled "after the telephone companies' 'Yellow Pages . . . .'" in determining that it was a "business establishment" for the purposes of the Unruh Civil Rights Act.

In this case, Plaintiff alleged that Optimum Health Institute is a "business" and a "public accommodation" which makes its services available to the general public in exchange for a fee. Although Defendants assert that Plaintiff's allegations are not plausible because Optimum Health Institute is a non-profit religious corporation, there is no categorical exception to the Unruh Civil Rights Act or to the Disabled Persons Act for non-profit religious corporations. As the California cases cited by the parties show, determining whether these laws apply to a non-profit religious corporation requires a court to examine a factual record of the entity's practices, services, and interaction with members of the public, among other factors. *See Curran*, 17 Cal. 4th at 697; *Doe,* 170 Cal. App. 4th at 838. The Court concludes that evidentiary analysis is not appropriate at the motion to dismiss stage. Defendants' Amended Motion to Dismiss is denied.

1

**CONCLUSION**

2          IT IS HEREBY ORDERED that Defendants' Amended Motion to Dismiss (Doc. # 16)

3  is **DENIED**.

4

5  DATED:  May 5, 2010

6                                        _William Q. Hayes_
                                         **WILLIAM Q. HAYES**
7                                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28